# EXHIBIT "A"
FINAL ORDER AND AWARD

AMERICAN ARBITRATION ASSOCIATION

EMPLOYMENT ARBITRATION TRIBUNAL

| | |
|---|---|
| BRITTANY BRADLEY and TAMIA BRITNIE CORBETT,<br><br>Plaintiffs,<br>v.<br><br>CENTRAARCHY RESTAURANT MANAGEMENT COMPANY,<br><br>Defendant. | CASE NO. 01-15-0004-4086<br><br>**FINAL ORDER AND AWARD** |

## I. Introduction

After the conditionally-certified class was decertified in this matter, this left the two named Plaintiffs, Brittany Bradley and Tamia Britnie Corbitt ("Plaintiff (individually)," "Plaintiffs (collectively)," "Ms. Bradley," or "Ms. Corbitt"), the sole plaintiffs in this Arbitration filed against Defendant CentraArchy Restaurant Management Company ("Defendant" or the "Company").

Cross motions for summary judgment were denied, and a hearing on the merits was held June 19 through 21, 2017 in Columbia, South Carolina.

At issue is whether Defendant violated that Fair Labor Standards Act (the "Act" or the "FLSA") by allowing its service bartenders, who Plaintiffs claim do not have any regular interaction with customers, to participate in the tip pool to which Plaintiffs have been mandated to contribute, and by paying Plaintiffs less than the statutory minimum wage by claiming the "tip credit" otherwise permitted by the Act.

As a result of the polarized legal standards asserted by the parties, both of which had points that could not be ignored, in the Order Denying Summary Judgment (the "Order"), a

standard was set that included the compelling portions of both parties' asserted standards, and incorporated a consideration of statutory, regulatory, administrative and judicial guidance.

## II. Legal Analysis

Section 203(m) of the FLSA articulates the standards for the permitted composition of tip pools. It provides that the minimum wage requirements of the FLSA "shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m).

"Service bartenders" are expressly identified as eligible tip pool participants in the regulations and administrative materials promulgated by the Department of Labor ("DOL").

In general, the regulations permit those employees that are typically in "front-of-the-house" positions to participate in a tip pool, while prohibiting those employees that hold "back-of-the-house" positions from participating.

The statutory and regulatory schemes on their own seem abundantly clear that service bartenders are permitted in a valid tip pool, as Defendant has repeatedly emphasized. However, case law interpreting the statute and regulations have made the analysis less clear and more subject to scrutiny and further analysis.

Specifically, and as Plaintiffs point out, in order to be included in a valid tip pool, some judicial guidance requires that employees must have sufficient visibility to the customers and/or customer interaction in order to be included in a valid tip pool.

The crux of Plaintiffs' contention is that Defendant's service bartenders are only customarily and regularly tipped because Defendant calls them "service bartenders" and includes them in the tip pool. They assert that they are not "customarily and regularly tipped" within the meaning of the law because they do not have sufficient customer visibility or customer

interaction, the standard which is promulgated primarily from case law in the Fifth and Sixth Circuits.

Plaintiffs have repeatedly urged that the regulations and administrative guidance do not outweigh the "regular interaction" standard which they espouse.

Defendant, on the other hand, has relied completely upon the statutory, regulatory and administrative guidance, asserting that judicial guidance that supports Plaintiffs' position is just wrong and incorrectly decided.

The Order identified the questions and answers to be presented at trial to be the following: **1) whether service bartenders in the industry are customarily and regularly tipped individuals; and 2) whether service bartenders at California Dreaming have the opportunity to be and/or are customarily and regularly tipped.**

This was not intended to infer that the statutes, regulations and administrative guidance, or the relevant case law should be ignored. Rather, the standard identified above intends to incorporate and consider all of such guidance as applied to the facts and as it relates to those two questions.

Defendant bears the burden of proving by a preponderance of the evidence that it is entitled to utilize the "tip credit" provision of the Act and that it properly has included lawful positions in the tip pool.

A.  **Defendant Has Shown by a Preponderance of the Evidence that Service Bartenders in the Industry are Customarily and Regularly Tipped Individuals**

The operative terms in Section 203(m) are "customarily" and "regularly." Thus, a part of the relevant analysis is whether it is customary and regular for a service bartender in the restaurant industry to receive tips. In order to make this determination, I directed the parties to present evidence regarding industry custom and practice. The evidence at trial established

without refute that it is customary in the industry in restaurants like California Dreaming for service bartenders to participate in the tip pool.

The evidence regarding how the restaurant industry customarily and regularly treats service bartenders is challenged as outdated, but undisputed substantively with any contradictory testimony. Multiple witnesses, albeit Defendant's witnesses, collectively possessing decades of industry experience, testified that service bartenders throughout the restaurant industry participate in tip pools.

CentraArchy CEO, Greg Greenbaum ("Mr. Greenbaum"), testified that he has worked in the restaurant industry for more than thirty years, starting as a dishwasher at TGI Fridays in 1983. During his career, Mr. Greenbaum served in a variety of positions, including both back-of-the-house and front-of-the-house jobs.

Mr. Greenbaum also worked as a service bartender at multiple restaurants, including ten different TGI Friday's locations and an Ed Debevic's location. Mr. Greenbaum has served in numerous restaurant management roles, including the subject Restaurant and several other restaurants now affiliated with CentraArchy. In every restaurant in which Mr. Greenbaum worked, service bartenders participated in a tip pool.

CentraArchy's COO, George Ogorek ("Mr. Ogorek"), testified similarly on this issue. Mr. Ogorek has a degree in restaurant management and more than 25 years of restaurant experience in every part of the country. He worked for Ruby Tuesday's, Maggiano's, and Brio's Tuscan Grill, among other restaurants, and has served in numerous management and operations positions. Mr. Ogorek testified that he has never encountered a service bartender who was not compensated through tips. Mr. Greenbaum's and Mr. Ogorek's testimony was credible and withstood the minor scrutiny imposed.

While the burden clearly was on Defendant to show the industry standard, Plaintiffs made no effort to produce any evidence as to industry standard, or to refute or to challenge Defendant's evidence or credibility other than to attack it on the basis of what Plaintiffs assert is outdated evidence. Such an attack is insufficient to defeat or refute the evidence on industry standard proffered by Defendant.

Plaintiffs offered no rebuttal to the testimony regarding industry custom and practice. Neither Ms. Bradley nor Ms. Corbitt has had experience at any restaurant other than California Dreaming that uses a service bartender. The other witnesses called by Plaintiffs were similarly inexperienced. In fact, the only witness called by Plaintiff with any relevant experience at a restaurant that employed service bartenders was Jessica Collier ("Ms. Collier"), who worked at J. Peters, and her testimony corroborated that of Mr. Greenbaum and Mr. Ogorek. Ms. Collier testified that the service bartender employed at J. Peters participates in the restaurant's tip pool and performs the identical function of the subject Restaurant's service bartenders.

In sum, the evidence regarding industry custom stands without contradiction. The credibility of Mr. Greenbaum and Mr. Ogorek on the issue of industry custom was never challenged, and their testimony was supported by Plaintiffs' own witnesses. Therefore, absent evidence to the contrary, Defendant has sustained its burden to show that including service bartenders in the tip pool is standard practice in the industry.

B.  **Service Bartenders at the Restaurant had the Opportunity to be Customarily and Regularly Tipped Employees.**

The analysis now turns to whether the service bartenders at California Dreaming had the opportunity to be customarily and regularly tipped. The DOL Handbook, Section 30d04(a), expressly states that "it is not required that all employees who share in tips must themselves receive tips from customers." Further, an employee may "receive" tips for purposes of Section 203(m) by participating in a tip pool—it is not necessary for the tips to be directly provided by customers. *See Kilgore v. Outback Steakhouse of Florida, Inc.,* 160 F.3d 294, 301 (6th Cir. 1996) (finding that statutory language and DOL regulations do not require tipped employees to receive tips directly from customers).

Clearly, service bartenders at California Dreaming did receive tips, but as recognized already, there is some circularity, where Plaintiffs argue that that argument would allow Defendant to decide to allocate the tip pool however it wants.

In a narrow analysis, the weakest link in Defendant's application of the facts to the legal standard asserted is whether, in general, service bartenders at the Restaurant had the opportunity to be customarily and regularly tipped *outside of the tip pool in which they participated at the relevant time*.

But, an analysis of an employee's eligibility to participate in a tip pool must be viewed in light of the totality of the circumstances of the job:

> [A] determination of an employee's eligibility to participate in a tip pool requires an *ad hoc* analysis of an employee's duties, rather than a *per se* determination based upon an employee's job title.

*Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714 (W.D. Tex. 2010). In the present case, relevant factors to consider include whether the service bartender works in the front of the house

with other tipped employees; whether the service bartender is visible to dining guests; and whether the service bartender has the opportunity to interact with customers.

Plaintiffs argue strongly and provide testimony that there was limited to no customer interaction, based on the service bartenders' job duties and expectations from management. They further argue that there was limited, if any, customer visibility based on the location of the service bar and its proximity to the dining room.

Factually, Plaintiffs may not be totally incorrect, although such facts are heavily disputed to great extent. However, Plaintiffs would have the entire analysis focus only on this narrow element, which is not determinative. The entire analysis cannot focus on customer interaction and customer visibility only, which is in large part judicially created. Also taken into account must be industry standard, as well as statutory and regulatory instruction.

1. **Service Bartenders are Front-of-the-House Employees.**

It was undisputed by all witnesses that service bartenders are front-of-the-house employees who provide an important customer service. The distinction between front-of-the-house and back-of-the-house employees is one which courts recognize as the primary distinction between those employees identified in the Handbook as tip-pool eligible and those identified as not. *See Guiffre v. Marys Lake Lodge, LLC*, No. 11-cv-0028, 2012 WL 4478806, at *2 (D. Colo. Sept. 28, 2012) ("Customarily, front-of-the-house staff . . . receive tips. Back-of-the-house staff . . . do not, and thus cannot participate in a mandatory tip pool.")(internal quotations omitted).

In *Giuffre,* the court considered whether a particular employee could participate in a tip pool. The restaurant's testimony confirmed that the employee was a member of the front-of-the-house team, whose position was "very similar to that of a waiter." The evidence showed that the employee's duties included checking plates; taking food to tables; responding to customer's requests; and "assisting the wait staff in any other way necessary." The evidence showed further

7

that only front-of-the-house employees ever filled this position, and when they did, they dressed similarly to other front-of-house employees. The plaintiff did not disagree about the job's function but testified that the employee did not, in fact, interact with guests. The court was not persuaded by the plaintiff's self-serving testimony, and based upon the evidence presented by the restaurant, the court found that the employee properly participated in the tip pool.

In this case, testimony from multiple witnesses confirmed that "front-of-the-house" and "back-of-the-house" are terms of art that are commonly used and understood at the Restaurant. Both Defendant's as well as Plaintiffs' witnesses testified unequivocally that front-of-the-house employees include hosts, servers, bartenders, *service bartenders*, and bussers. They dress similarly; they are scheduled together; they are trained together; and they are managed together.

By contrast, back-of-the-house employees are those located behind the line. They include cooks and dishwashers. They dress similarly; they are scheduled together; they are trained together; and they are managed together. Back-of-the-house employees are not expected to be on the dining room floor. Ms. Bradley admitted as much when she testified without qualification that managers were often desperate for *"anyone"* to help run food, yet she never heard a manager ask a cook or a dishwasher to do it, no matter how busy the Restaurant was.

Even the work history of Plaintiffs' witnesses confirms the service bartender's front-of-the-house status. Each witness held multiple positions at the Restaurant, from host to food runner to server to bartender. Not one of them ever trained to or worked as a cook, a dishwasher, or even a kitchen manager. Nor could they recall a single front-of-the-house employee who did.

2.  **Service Bartenders at the Restaurant Provided Visible Customer Service in the Dining Room Area.**

Plaintiffs have repeatedly contended that the Arbitrator should evaluate whether service bartenders provide "visible customer service," and have customer contact, a concept which

8

derives from a single Texas district court decision, *Barrera*. *See Barrera v. MTC, Inc.*, 20011 WL 3273196, at *1 (W.D. Tex. July 29, 2011).

In that case, the court gave no weight to the language of the FLSA, the Handbook, or the industry custom. Instead, the court created its own standard of "visible customer service." As a result, the concept of "visible customer service" and customer contact, while perhaps evidence of whether a service bartender has the opportunity to be tipped, cannot alone overcome the statutory, regulatory, administrative guidance, or the industry standard that has gone virtually unchallenged, except with conclusory allegations of outdated evidence.

Nevertheless, this element is worthy of analysis. In this case, the service bartender's location in the Restaurant was visible to many patrons in the main dining area and some of the perimeter areas. The service bar was located in a portion of the Restaurant separate from but adjacent to the kitchen and used exclusively by front-of-the-house employees.

It was undisputed that the service area was where the servers go to get tea, lemons, ice, and sodas. The kitchen line is where the cooks cook the food. The two areas – kitchen and service area were maintained separately. Not only are the front-of-house employees not allowed in the kitchen, back-of-the-house staff are not allowed in the service area.

Guests (not all, but then not all could see the main bar) could observe the service bartender from multiple locations in the Restaurant. The service bar was enough of a part of the dining room that Georgette Hare, former service bartender, recalled fielding "plenty of questions" from guests regarding the location of the restrooms. This evidence demonstrates that service bartenders at the Restaurant provided at least some visible customer service.

    3.    <u>**Service Bartenders May Have had the Opportunity to Interact with Guests.**</u>

The evidence was disputed as to whether service bartenders had the opportunity to interact with guests, or were expected to do so whenever they were able. Each of Defendant's

9

witnesses provided testimony regarding the role of the service bartender and the expectations and requirements of the job.

Undisputed testimony from all witnesses reflected that service bartenders are front-of-the-house staff, and their primary job is to make the drinks and desserts for dining room guests. Also, however, every single representative of CentraArchy testified that service bartenders are responsible for filling additional needs that arise in the front of the house. CentraArchy's representatives recalled specific examples of service bartenders' interaction with guests.

Plaintiffs and their witnesses disputed some, if not all, of Defendant's witness testimony regarding customer interaction. For the most part, non-service bartenders' testimony was unequivocal that they never saw or asked a service bartender to run food or come out of the service area. Service bartender witnesses were unequivocal that they were never asked to and never left the service bar....for the most part.

However, Ms. Corbitt testified that she did recall service bartenders on at least two occasions in her tenure to run food. Ms. Bradley testified that there could have been times that service bartenders ran food, but she could not recall when. She testified that there were times that she heard managers call for service bartenders to run food. Ms. Hare testified that she would run food if she were "caught up and they were slammed." Therefore, the credibility of their own contradictory testimony that service bartenders were never asked to or did run food is called into question.

CentraArchy witnesses were unequivocal and credible that service bartenders were expected to and did perform functions outside the service bar in the front of the house. Their credibility outweighed most of Plaintiffs' and Plaintiffs' witness testimony regarding interaction

10

with guests. Based on the totality of all testimony, it is more likely than not that service bartenders did perform duties that required some customer interaction.

Most, if not all, witnesses testified that even when the service bar was moved from the service area to the main bar, the service bartenders' duties remained exactly the same, where their primary function was the same as that of the main bartender – preparing alcoholic drinks to be served to customers.

C. **The Department of Labor's Administrative Guidance Expressly Permits Service Bartenders to Participate in a Tip Pool.**

CentraArchy contends that Section 203(m) expressly addresses service bartenders' tip-pool eligibility, and there is no need to look beyond the language of the statute. However, the stated standard includes a consideration of all guidance, including the interpretive materials promulgated by the DOL provide guidance. These materials include the DOL Field Operations Handbook (the "Handbook") and various fact sheets that are made available on the DOL's website.

1. **The Handbook and Fact Sheet Explicitly Identify Service Bartenders as Proper Tip Pool Participants.**

The clearest administrative guidance regarding tip pool participants comes from the DOL Field Operations Handbook. As set forth on the DOL website, the Handbook is "an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance."

Section 30(d)(4) of the Handbook serves to interpret the tip pool provisions contained in Section 203(m) of the FLSA and the regulation found at 29 C.F.R. 531.54. The statute and accompanying regulation authorize employees who "customarily and regularly receive tips" to participate in tip pools. The DOL has determined that this standard merits additional

11

explanation, and it published Section 30(d)(4) of the Handbook for the express purpose of illustrating which employees do and do not qualify as tip pool participants. The Handbook expressly identifies those employees who "customarily and regularly receive tips," and in so doing, it provides a reasonable interpretation that is not plainly inconsistent with the language of the statute or regulation.

The Handbook is what the DOL's own investigators and staff members use to enforce the FLSA and to make sure that employers are complying with the law. To that end, the DOL explains on its website that "the FOH reflects policies established through changes in legislation, regulations, significant court decisions, and opinions of the WHD administrator." In other words, the Handbook purportedly reflects the DOL's understanding of what the various provisions of the FLSA mean.

The Handbook creates three groups of employees: (1) those recognized as eligible; (2) those recognized as ineligible; and (3) those whose eligibility should be evaluated using a fact-specific analysis. Sservice bartenders appear specifically on the first list, and the DOL recognizes those employees as *per se* eligible participants in a tip pool.[1]

In addition to the Handbook, the DOL also publishes a series of fact sheets regarding FLSA issues. The DOL website explains that the fact sheets are designed to "provide employers with readily accessible, easy-to-understand information relevant to both their rights and to their responsibilities under the law."

Fact Sheet #15 addresses tipped employees, and it, like the Handbook, provides express guidance regarding the composition of a tip pool. Fact Sheet #15 specifically identifies service

---

[1] The Handbook was amended in December 2016 and included additional guidance regarding tip pooling, resulting from opinion letters and court decisions. The Handbook continues to identify service bartenders as "employees who customarily and regularly receive tips."

bartenders as "employees who customarily and regularly receive tips." The DOL has explicitly informed restaurant owners that they may include service bartenders in tip pools.

2.     **The DOL Handbook and Fact Sheet Cannot be Ignored.**

The Handbook was created for the express purpose of assisting the DOL's investigators and staff in implementing the FLSA. As such, the Handbook sets the standard that the DOL uses to determine whether employers are in compliance with the FLSA. Service bartenders are expressly identified as lawful tip pool participants. Fact Sheet #15 is also persuasive. The DOL makes this document publicly available for the sole purpose of assisting employers with FLSA compliance. In the Fact Sheet, DOL expressly identifies service bartenders as "customarily and regularly tipped." Purportedly, DOL promulgates such document to provide guidance to employers about their obligations under the FLSA in order to promote legal compliance. Employers have a right to rely on such guidance at least to some degree.

The Handbook identifies servers, bartenders (i.e., counter personnel), busboys, and service bartenders as eligible tip pool participants, while janitors, cooks, and dishwashers are not eligible. This divide directly mirrors the distinction between front-of-the-house and back-of-the-house employees. There was extensive testimony presented that service bartenders are part of the front-of-the-house team, with all employees on that team participating in the tip pool. Likewise, there was ample evidence that service bartenders are *not* part of the back-of-the-house team, which is composed of cooks, dishwashers, and janitors. It appears that the Handbook distinguishes between front-of-the-house and back-of-the-house teams, a distinction that is both logical and consistent with the evidence regarding the Restaurant and the industry.

The DOL guidance supports a conclusion that service bartenders are properly included in the tip pool.

D.   **Defendant Has Demonstrated Good Faith in Its FLSA Compliance**

Defendant's witnesses testified credibly as to the actions it takes to comply with the Fair Labor Standards Act. Julie Smith, as the CFO, and who had been with Defendant for 30 years, testified that she relies on the DOL Handbook and Fact Sheets to ensure compliance, and she regularly performs research, and attends seminars and webinars to stay abreast of changes in the FLSA. When Mr. Greenbaum flags issues of which he becomes aware that may affect the Company, Ms. Smith investigates to determine what, if any, effect they might have on the Company and what action may need to be taken. In addressing tip pool issues, Ms. Smith reasonably relied on DOL materials to make the determination that service bartenders were properly classified. Defendant acted reasonably and in good faith with regard to FLSA compliance.

### III.   Conclusion and Award

Defendant has sustained its burden and has shown by a preponderance of the evidence that it is entitled to take the tip credit allowed by the Act for its service bartenders by showing the following: service bartenders in the restaurant industry are customarily and regularly tipped; service bartenders perform the same function as bartenders, who are also eligible to be included in tip pools; Defendant's service bartenders are front-of-the-house employees who have the opportunity to interact with and/or be visible to customers; DOL regulations and administrative guidance unequivocally include service bartenders as those eligible to participate in tip pools..

As a result of the totality of the evidence, as well as weighing the credibility of the witnesses and documentary evidence, I find for Defendant, and deny Plaintiffs all relief requested.

The administrative fees and expenses of the AAA totaling $2,600.00, and the compensation and expenses of the Arbitrator totaling $83,700.00 are to be borne as incurred.

Respectfully submitted this 23rd day of August, 2017.

_Kristine L. Cato_